CRAIG R. KAUFMAN (SBN 159458)
  ckaufman@ftklaw.com
JASON S. ANGELL (SBN 221607)
  jangell@ftklaw.com
FREITAS TSENG & KAUFMAN LLP
100 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:  (650) 593-6300
Facsimile:   (650) 593-6301

Attorneys for Plaintiff
Mortgage Grader, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTGAGE GRADER, INC.<br><br>             Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE CORPORATION; FIRST CHOICE LOAN SERVICES, INC.; AND NYLX, INC.<br><br>             Defendants. | Case No.  8:13-cv-00043-AG-AN<br><br>**MORTGAGE GRADER'S OPENING CLAIM CONSTRUCTION BRIEF** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND OF THE PATENTS-IN-SUIT ......................................... 1

    A. U.S. Patent No. 7,680,728 ................................................................. 1

    B. U.S. Patent No. 7,366,694 ................................................................. 2

III. THE LAW OF CLAIM CONSTRUCTION ............................................... 4

IV. CONSTRUCTION OF DISPUTED TERMS ............................................. 5

    A. "Credit Grading" ('694 Patent claims 1 and 19; '728 Patent Claim 6) .............................................................................................. 6

        1. The Term "Credit Grading" Should Have The Same Meaning in Both Patents ................................................................ 7

        2. The Court Should Adopt Mortgage Grader's Proposed Construction .................................................................................. 7

        3. The Court Should Reject Defendants Proposed Constructions ................................................................................ 8

            a. The '694 Patent ................................................................. 9

            b. The '728 Patent ............................................................. 11

    B. The Exposure Limitations ............................................................... 12

        1. "None of the received personal information of the borrower is released to any of the lenders without specific authorization from the borrower" ('728 Patent, Asserted Claim 6) .................................................................................... 13

        2. "Without exposing any personal information to any of the lenders" ('728 Patent, Asserted Claim 6) ............................... 14

        3. "Selectively expose at least the personal loan evaluation information to a lender" ('694 Patent, Asserted Claim 1) ........ 15

        4. "without exposing any of said financial information of the borrower to any lender" ('694 Patent, Non-Asserted Claims 16, 23, and 31) ................................................................ 16

    C. "Loan Packages" ('694 Patent, Claims 1 and 19) ........................... 17

    D. "Guaranteed closing cost information/guaranteed closing cost information for closing services not provided by the lender" ('694 Patent, Claim 19) ................................................................... 19

**TABLE OF CONTENTS**
**(continued)**

Page

E.     "Anonymous" ('694 Patent, Claim 1).................................................20

    1.     Defendants' Construction of "Anonymous" for the '694 Patent Should Be Rejected ......................................................22

    2.     Defendants' Construction of "Anonymous for The '728 Patent Should Be Rejected ......................................................23

V.     CONCLUSION ...........................................................................24

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Augme Techs., Inc. v. Pandora Media, Inc.,*
2012 W.L. 6055010, (D. Del. Dec. 5, 2012)....................................................... 13

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.,*
438 F.3d 1374 (Fed. Cir. 2006) ..............................................................11, 18

*Cybor Corp. v. FAS Techs., Inc.,*
138 F.3d 1448 (Fed. Cir. 1998) .........................................................................4

*Funai Elec. Co., Ltd. V. Daewoo Elec. Corp.,*
616 F.3d 1357, 1366 (Fed. Cir. 2010) .............................................................. 11

*Lighting Ballast Control LLC v. Philips Elec. North Am. Corp.,*
2014 WL 667499 (Fed. Cir., Feb. 21, 2014)...................................................... 4

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995) .............................................................................5

*NTP, Inc. v. Research in Motion, Ltd.,*
418 F.3d 1282 (Fed. Cir. 2005) ..........................................................................6

*Omega Eng'g, Inc. v. Raytek Corp.,*
334 F.3d 1314 (Fed. Cir. 2003) ..........................................................................7

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) ................................................................*passim*

*SanDisk Corp. v. Memorex Prods., Inc.,*
415 F.3d 1278 (Fed. Cir. 2005) ...................................................................9, 18

*SRI Int'l. v. Matsushita Elec. Corp. of Am.,*
775 F.2d 1107 (Fed. Cir. 1985) ..........................................................................4

*Thorner v. Sony Computer Entm't Am. LLC,*
669 F.3d 1362 (Fed. Cir. 2012) ................................................................*passim*

*Toshiba Corp. v. Imation Corp.,*
681 F.3d 1358,1367 (Fed. Cir. 2012) .............................................................. 11

- iii -

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3   *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.,*
4       200 F.3d 795 (Fed. Cir. 1999) ................................................................6, 16, 23

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION.

This is a patent infringement action involving U.S. Patent Nos. 7,366,694 and 7,680,728, both of which relate to systems and methods for allowing individuals to electronically shop for mortgage loans online.  Both patents are owned by Mortgage Grader, a local business whose President, Jeff Lazerson, is the named inventor of the patents.  The accused system is a mortgage shopping system offered by Defendants through the website www.costcofinance.com.

The parties have identified eight terms for construction in the asserted claims. Mortgage Grader contends that four of these terms need no construction at all, as they are made up of ordinary English words, and no further construction is necessary to construe the terms.  The remaining four terms should be given meanings consistent with the intrinsic record.

Defendants, in their proposed constructions, seek to improperly read limitations into the claims from the specification or file history.  The Court should reject Defendants' efforts to narrow the claims in this manner.

## II.     BACKGROUND OF THE PATENTS-IN-SUIT.

The patents-in-suit relate to computer implemented systems and methods that allow individuals to shop for mortgages online.

### A.     U.S. Patent No. 7,680,728.

The '728 Patent was filed on May 6, 2002, and issued as a patent on March 16, 2010.  Pursuant to the Court's Standing Patent Rule ("SPR") 2.1, Mortgage Grader asserted that Defendants infringe claim 6 of the '728 patent, which is reproduced below:

> 6. A method of assisting a borrower in obtaining a loan, the method comprising:
>
> (a) receiving, over a network, personal information of a borrower, said personal information including financial information of the borrower, and including information

regarding objectives of the borrower in seeking a loan, said personal information obtained, at least in part, via an online form completed by the borrower;

(b) selecting, based on said information regarding objectives of the borrower, underwriting criteria to be used to generate a credit grading for the borrower;

(c) programmatically generating the credit grading for the borrower using the selected underwriting criteria, wherein the selected underwriting criteria includes objective criteria used by one or more lenders capable of providing the loan;

(d) outputting information regarding the credit grading, and information regarding a plurality of lenders capable of providing the loan, to the borrower; and

(e) subsequently to steps (a)-(d), in response to receiving authorization from the borrower, sending the credit grading and at least some of the personal information of the borrower to a particular one of said lenders selected by the borrower;

wherein steps (a)-(e) are performed by a third party evaluator that does not provide the loan, and is performed such that none of the received personal information of the borrower is released to any of the lenders without specific authorization from the borrower, whereby the method enables the borrower to assess its borrowing ability and to select a lender for providing the loan without exposing any personal information to any of the lenders, wherein the method comprises the third party evaluator selecting and applying the underwriting criteria of a particular lender, as obtained confidentially from said particular lender.

*See* Declaration of Craig R. Kaufman ("Kaufman Decl."), Exh. 1.

### B.     U.S. Patent No. 7,366,694.

The '694 patent is a continuation-in-part of the '728 patent. The '694 patent application was filed on July 29, 2002 and issued on April 29, 2008. Pursuant to SPR 2.1, Mortgage Grader asserted that Defendants infringe claims 1, 2, and 19 of the '694 patent. Representative claim 1 of the '694 patent is reproduced below:

1.     A computer-implemented system for enabling borrowers to anonymously shop for loan packages offered by a plurality of lenders, the system comprising:

a database that stores loan package data specifying loan packages for home loans offered by the lenders, the loan package data specifying, for each of the loan packages, at least a loan type, an interest rate, and a required borrower credit grading; and

a computer system that provides:

a first interface that allows the lenders to securely upload at least some of the loan package data for their respective loan packages to the database over a computer network; and a second interface that prompts a borrower to enter personal loan evaluation information, and invokes, on a computer, a borrower grading module which uses at least the entered personal loan evaluation information to calculate a credit grading for the borrower, said credit grading being distinct from a credit score of the borrower, and being based on underwriting criteria used by at least some of said lenders;

wherein the second interface provides functionality for the borrower to search the database to identify a set of loan packages for which the borrower qualifies based within the set, including loan type and interest rate, while remaining anonymous to each of the lenders and without having to post a request to any of the lenders, said second interface configured to display to the borrower an indication of a total cost of each loan package in the set, said total cost including costs of closing services not provided by corresponding lenders;

and wherein the computer-implemented system further enables the borrower to selectively expose at least the personal loan evaluation information to a lender corresponding to a selected loan package.

*See* Kaufman Decl., Exh. 2.

### III.     THE LAW OF CLAIM CONSTRUCTION.

Claim construction—the first step in any infringement analysis—is the process of determining what the claims mean.  The proper construction of the asserted claims is a question of law for the court.  *Lighting Ballast Control LLC v. Philips Elec. North Am. Corp.,* 2014 WL 667499 at *11 (Fed. Cir., Feb. 21, 2014) (*en banc*); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (*en banc*).

The starting point in any claim construction analysis is the language of the claims themselves.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).  Claim terms are generally given their "ordinary and customary meaning," which is the meaning the term would have to a person of ordinary skill in the art at the time of the invention; *i.e.*, as of the effective filing date of the patent application.  *Id*. at 1312-13 (citation omitted).  The person of ordinary skill in the art is deemed to read a claim term not only in the context of the particular claim in which it appears, but in the context of the entire patent, including the specification.  *Id*. at 1313.  Indeed, the Federal Circuit has held that "the best source for understanding a technical term is the specification from which it arose" as the claims of a patent are always to be read or interpreted in light of its specification.  *Id*. at 1315-16 (citations omitted).  However, in some cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id*. at 1314.

While the claims should be interpreted in view of the specification, it is improper to limit the claims to the specific examples set forth in the specification.  *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (*en banc*); *Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, (Fed. Cir. 2012) ("[w]e do not read limitations from the specification into the claims; we

do not redefine words.  Only the patentee can do that.").  The specification may be used to limit claim scope to a specific embodiment only when there is a disavowal of broader claim scope accomplished by "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Thorner,* 669 F.3d at 1366 (citations omitted).  This is obviously a high standard to meet.

A court may also, in its discretion, consider extrinsic evidence. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995).  Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries and learned treatises." *Id*.  Dictionaries, especially technical dictionaries, may provide the court with a better understanding of the underlying technology and the way in which one of skill in the art might use the claim term. *Phillips*, 415 F.3d at 1318.  However, while extrinsic evidence may sometimes be useful in claim construction, extrinsic evidence may not be used for the purpose of varying or contradicting the meaning of claim language as determined by the intrinsic evidence. *Markman*, 52 F.3d at 981.

**IV.   CONSTRUCTION OF DISPUTED TERMS.**

The parties have exchanged constructions, agreed on the construction of one term, and have identified 10 disputed terms for construction.  Dkt. 40 at 2-3.  Eight of these terms are found in the asserted claims, and the parties agree that these are the most significant terms for construction. *Id*.

The remaining two terms are found in claims that Mortgage Grader did not identify as infringed in its SPR 2.1 pleading.[1]  Dkt. 40 at 3.  Mortgage Grader believes that the Court does not need to construe limitations found only in non-asserted claims, and requests that the Court exercise its discretion not to do so. *See,*

---

[1] The terms that do not appear in any asserted claims are: "anonymous" (unasserted claims 3 and 4 of the '728 patent), and "without exposing any of said financial information of the borrower to the lender" (unasserted claims 16, 23 and 31 of the '694 patent).  Dkt. 40 at 2-3.

*e.g., NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1311 (Fed. Cir. 2005); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those [claim] terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.")**.**

For the reasons set forth below, Mortgage Grader's proposed constructions should be adopted.

### A.   "Credit Grading" ('694 Patent claims 1 and 19; '728 Patent Claim 6).

This term is found in all asserted claims of the '694 and '728 patents.  The parties' proposed constructions for this term are set forth below:

| Mortgage Grader's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| **['694 Patent]:** An evaluation using at least some of the borrower input data, which is used to match the borrower with suitable loan packages | **['694 Patent]:** Credit grading is distinct from a credit score of the borrower, and is generated at least partly using underwriting criteria of one or more lenders. The mere pulling and analysis of a credit report does not satisfy these limitations and does not provide an effective way to assess the borrowing ability of the borrower, particularly in the home loan context |
| **['728 Patent]:**  An evaluation using at least some of the borrower input data, which is used to match the borrower with suitable loan packages | **['728 Patent]:** Credit grading is the use of one or more underwriting criteria for grading a borrower.  A mechanism for "varying the criteria" used for grading borrowers is inherent in this claim language and particularly the phrase "selecting based on said information regarding the objectives of the borrower, underwriting criteria to be used" define this phrase.  Indeed, this claim language cannot be properly read on a process in which the criteria for generating the grading is fixed. |

1

2

### 1.    The Term "Credit Grading" Should Have The Same Meaning in Both Patents.

3

4      Mortgage Grader has proposed that the term "credit grading" should be given

5   the same construction in both the '694 patent and the '728 patent.  These patents are

6   related as parent and child (continuation-in-part), and as a rule, common terms in

7   related applications should be given the same meaning, unless there is some clear

8   reason not to do so.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed.

9   Cir. 2003) ("We presume, unless otherwise compelled, that the same claim term in

10  the same patent or related patents caries the same construed meaning."); *Phillips*,

11  415 F.3d at 1314 ("Because claim terms are normally used consistently throughout

12  the patent, the usage of a term in one claim can often illuminate the meaning of the

13  same term in other claims").  While the specifications are not identical, because the

14  '694 patent is a continuation-in-part of the parent '728 patent, both specifications

15  describe the concept of "credit grading" in a consistent manner, and thus there is no

16  basis to define this term differently in different patents.  Of course, individual

17  claims may further limit the meaning of "credit grading" in the context of that

18  specific claim, but these limitations should be separately construed and not be read

    into the general meaning of the term "credit grading."

19

### 2.    The Court Should Adopt Mortgage Grader's Proposed Construction.

20

21     Mortgage Grader's proposed construction should be adopted because it is

22  supported by the intrinsic record.  Credit grading, as described by the '694 and '728

23  patent specifications, is a broad concept.

24     Support for Mortgage Grader's construction is found throughout the

25  specification.  For example, in the Summary of the Invention, the '694 patent

26  describes "credit grading" broadly as something "determined for the borrower

27  based upon pre-established and objective criteria."  '694 Patent, Col. 1:59-62. *See,*

28

*also,* '728 Patent, col. 1:50-58 (same).  The broad concept of the credit grading is further explained in the specification:

> The logic then moves to block 104 where a credit grade
> or score is determined.  In conjunction with the
> previously answered configurative questions, the
> borrower's mortgage or other financial application will
> be evaluated based upon objective, pre-set underwriting
> criteria.  One or more, and preferably all, of the credit
> history, credit score(s), equity, down payment, income,
> assets, job history and stability should be considered.
> The criteria need not be inclusive of all lender's criteria.

'694 Patent, col. 4:34-43; '728 Patent, col. 4:19-27 (same).  *See, also¸* '694 Patent, col. 7:67-8:5 ("The credit grading includes a grading based on combinations of a variety of factors, including various combinations of a credit report for the borrower, borrower income, borrower assets, borrower liabilities, property appraisal, title report, and whatever criteria a particular lender deems appropriate."); '694 Patent, col. 15:56-58 ("The exact nature of the information analyzed will vary with the nature of the financial transaction involved."); '728 Patent, col. 7:45-48.  These broad descriptions of a credit grading in both the '694 and '728 patent specifications support Mortgage Grader's proposed construction of this term, and Mortgage Grader's proposed construction should be adopted.

### 3.    The Court Should Reject Defendants' Proposed Constructions.

Defendants' constructions should be rejected as an effort to improperly import a limitation from the prosecution history into the claim, as well as to incorporate ambiguous functional language into the construction.

1
                                 **a.**      **The '694 Patent.**

2
        Defendants' proposed construction for the '694 patent seeks to limit the term

3
"credit grading" by requiring that it be generated using underwriting criteria of one

4
or more lenders, by excluding the "mere pulling and analysis of a credit report" and

5
by reciting a perceived problem with the "pulling and analysis" of the credit report,

6
which would confuse the jury and be impossible to apply.  Dkt. 40-1 at 4.  In so

7
doing, Defendants are impermissibly reading a limitation from the prosecution

8
history into the claim.

9
        While the prosecution history can be consulted in claim construction, and is

10
part of the intrinsic record, the Federal Circuit has cautioned that "because the

11
prosecution history represents an ongoing negotiation between the PTO and the

12
applicant, rather than the final product of that negotiation, it often lacks the clarity

13
of the specification and thus is less useful for claim construction purposes."

14
*Phillips*, 415 F.3d at 1317.  It is for that reason that the Federal Circuit requires any

15
prosecution disclaimer to be "clear and unambiguous."  *SanDisk Corp. v. Memorex*

16
*Prods., Inc.* 415 F.3d 1278, 1287-88 (Fed. Cir. 2005) ("An ambiguous disclaimer,

17
however, does not advance the patent's notice function or justify public reliance,

18
and the court will not use it to limit a claim term's ordinary meaning.")  The

19
prosecution history of the '694 patent does not present a clear and unambiguous

20
disclaimer of claim scope for the term "credit grading," and thus should not be used

21
to narrow the construction of the term "credit grading."

22
        The statement that Defendants seek to import into the definition of "credit

23
grading" is found in a response dated October 7, 2007.  MG00020948.[2]  This

24
statement comes from an argument discussing the following claim limitation from

25
claim 38 (now claim 19):

26

27
    ———————————

28
[2] Pursuant to SPR 3.5.2, a copy of the certified file history for each patent will be submitted to the Court with the responsive claim construction briefs.

> automatically generating or causing the generation of a
>
> credit grading for the borrower such that the credit
>
> grading is dependent upon the loan evaluation data
>
> entered by the borrower, said credit grading being
>
> distinct from a credit score obtained from a credit bureau,
>
> and being generated at least partly using underwriting
>
> criteria of one or more lenders

*Id.* Because the argument is addressed to the above limitation, and not simply the term "credit grading," it does not operate define the broader term. While the limitation is related to the term "credit grading" to be sure, the claims use "credit grading" in a variety of different contexts that are not all addressed in this limitation. MG00020948. Because the argument does not define the term "credit grading" in the broad sense, it should not limit the term. While this is true for claim 19, this is particularly true for claim 1, as the argument Defendants' seek to import into the construction of that claim as well was not made for claim 1, and thus should not be used to limit the term "credit grading" in that claim. MG00020947.

In addition, the argument should not be read into the claim because the scope of any alleged disclaimer is ambiguous. For example, Defendants seek to exclude "analysis" of the credit score as part of a "credit grading." Yet it is not clear what "analysis" is contemplated by this statement. Both the specification and the issued dependent claims provide for the use (analysis) of a credit score as part of the calculation of a credit grade. *See, supra,* and '694 patent claim 9. In this context, the "analysis" cannot exclude any use of a credit score. Because the argument is ambiguous, the doctrine of prosecution disclaimer does not apply and the Court should not adopt Defendants' construction.

In addition, Defendants proposed construction for claim 1 would violate the doctrine of claim differentiation, as claim 9, which depends therefrom, recites the use of the credit score to calculate the credit grade. '694 Patent, Claim 9, col.

18:20-22 ("borrower grading module calculates the credit grading based in part on a borrower credit rating obtained from a credit bureau."); *Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006) ("In the most specific sense, 'claim differentiation' refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim.").  For this additional reason, Defendants' construction should be rejected.

Finally, Defendants' proposed construction for the '694 patent should also be rejected to the extent it does not provide a definition of the term, but merely recites a perceived inadequacy with the use of credit scores alone.  Dkt. 40-1 at 4.  Introducing a statement of purpose into the construction, particularly one not supported by the patent specification, is inappropriate and Defendants' construction should be rejected.  *See, e.g.*, *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358,1367 (Fed. Cir. 2012) (reversing a district court for improperly reading a "purpose" requirement into construed claim terms).  In considering whether or not to use comparative or functional language as part of a claim term, the "criterion is whether the explanation aids the court and the jury in understanding the term as it is used in the claimed invention."  *Funai Elec. Co., Ltd. V. Daewoo Elec. Corp.,* 616 F.3d 1357, 1366 (Fed. Cir. 2010).  In this case, Defendants' inclusion of a statement about the adequacy of credit scores alone will not help this Court, or the jury, understand the term, and the proposed construction should be rejected.

### b.    The '728 Patent.

In the '728 patent, Defendants again seek to read limitations from the file history into the phrase "credit grading."  They are different limitations, but the principle is the same.  The Court should reject Defendants proposed construction because any alleged disclaimer does not apply to the claim term "credit grading" and the disclaimer is not unambiguous.

Defendants' paragraph-long construction of a two word claim term seeks to add the following limitations to the term: (1) "varying the criteria" used for the

grading; and (2) to carve out any system for grading where the "criteria for generating the grading is fixed." Dkt. 40-1 at 1. This imported material comes from a Reply Brief filed before the Board of Patent Appeals and Interferences during prosecution of the '728 patent. MG0020589. The argument is responding to the Examiner's answer, and cites page 15 of the Examiner's answer as identifying the claim limitation to which the argument applies. *Id.* The claim limitation at issue is "selection . . . underwriting criteria to be used . . ." MG0020573. That is not "credit grading," but like the limitation discussed above with respect to the '694 patent, relates to how the credit grading is generated in the context of one specific claim. Because this argument does not define the term "credit grading," the doctrine of prosecution disclaimer does not apply.

Likewise, the doctrine does not apply because any alleged disclaimer is not unambiguous. This is particularly true with respect to the incorporation of the statement that a "fixed" process does not apply, without providing any clarity about what makes a process "fixed" or not. Because the argument is ambiguous, there is no prosecution disclaimer, and the sentences from the prosecution history should not be read into the construction of "credit grading."

**B.    The Exposure Limitations.**

Four of the limitations identified for construction relate to when the consumer's personal finance information input into the system is transmitted to the lenders. Mortgage Grader contends that these terms, which use simple and easy to understand English words with well-known meanings, do not need to be construed. Defendants, while stating that the terms do not need to be construed and should be given a plain meaning, proceed to then provide a construction that is inconsistent with the plain language of the claim and unsupported by the intrinsic record.[3] As

---

[3] Defendants' have proposed the same construction for all four terms. Dkt. 40-1, at 1-2 and 7-9.

explained below, Defendants' proposed constructions import notions of anonymity not required by the claim language.

> **1.    "None of the received personal information of the borrower is released to any of the lenders without specific authorization from the borrower" ('728 Patent, Asserted Claim 6)**

This term is found in asserted claim 6 from the '728 patent.  The parties' proposed constructions for this term are set forth below:

| Mortgage Grader's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No Construction Necessary | Does not require construction and can be assigned its ordinary and customary meaning, which is: The borrower is anonymous to lender during the use of the method of claim 6, until if or when the borrower authorizes disclosure of the borrower's identity. |

Mortgage Grader has proposed that no construction is necessary, as the plain and ordinary meaning of the terms should control.  This phrase is made up of ordinary English words, and the ordinary meaning can be well understood by a person skilled in the art without further elaboration.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *Augme Techs., Inc. v. Pandora Media, Inc.*, 2012 WL 6055010, n.4 (D. Del. Dec. 5, 2012) ("Sometimes a claim construction dispute may be resolved without adopting a construction of the disputed term other than 'plain and ordinary meaning.'  *See, e.g., Thorner v. Sony Computer Entm't. Am. LLC,* 669 F.3d 1362, 1365-66 (Fed. Cir. 2012)").  This is such a case.  All four of these limitations are made up of clear,

easily understandable words.  They mean what they say, nothing more, and no further construction is necessary or appropriate.

While Defendants state that no construction is necessary and that the plain meaning should control, they proceed to provide a construction that varies from the plain language of this claim term, introducing concepts of "anonymity" that are neither present in the plain language of the claim nor required by material Defendants' have cited in the Joint Claim Construction Statement to support their claim construction.  Dkt. 40-1 at 1-2, 7-9.  Without any express redefinition or disclaimer of this term, the Court should not adopt Defendant's proposed limitation of this term.  *Thorner*, 669 F.3d at 1365-66 (to limit a term to something other than its ordinary meaning, a patentee either "sets out a definition and [acts] as his own lexicographer," or "disavows the full scope of a claim term either in the specification or during prosecution.").[4]

### 2.   "Without exposing any personal information to any of the lenders" ('728 Patent, Asserted Claim 6)

This term is found in the only asserted claim in '728 patent.  The parties' proposed constructions for this term are set forth below:

| Mortgage Grader's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No Construction Necessary | Does not require construction and can be assigned its ordinary and customary meaning, which is: The borrower is anonymous to lender during the use of the method of claim 6, until if or when |

[4] The Defendants' proposed construction should also be rejected because it raises the potential of an ambiguity in the construction through the use of the "anonymous."  Defendants' have proposed two separate constructions for "anonymous" in connection with the patents-in-suit.  Dkt. 40-1 at 2 and 4.  Ironically, the definition of "anonymous" refers back to the selective disclosure of information.  This circular analysis provides additional grounds to reject Defendants' construction.

| | the borrower authorizes disclosure of the borrower's identity. |
|---|---|

The parties' proposed construction of this term are the same as the proposed constructions of the preceding term and present the same construction issues.  For the reasons set forth above, there is no need to construe this term, and certainly no support for Defendants' proposed construction of the term.  The Court should adopt Mortgage Grader's proposed construction of this term.

### 3.     "Selectively expose at least the personal loan evaluation information to a lender" ('694 Patent, Asserted Claim 1)

This term is found in asserted claim 1 of the '694 patent.  The parties' proposed constructions for this term are set forth below:

| Mortgage Grader's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No Construction Necessary | Does not require construction and can be assigned its ordinary and customary meaning, which is: The borrower is anonymous to lender during the use of the system of claim 1, until if or when the borrower authorizes disclosure of the borrower's identity. |

The parties' proposed construction of this term are the same as the proposed constructions of the preceding terms and present the same construction issues.  Like the '728 patent, none of the identified support for Defendants' construction in the '694 patent operates to redefine or disclaim the ordinary meaning of this term.  For the reasons set forth above, there is no need to construe this term, and certainly no support for Defendants' proposed construction of the term.  The Court should adopt Mortgage Grader's proposed construction of this term.

In addition, Defendants' proposed construction of this term should also be rejected under principles of claim differentiation.  Dependent claim 25 provides that the "system of claim 1 . . .  communicates the personal loan evaluation information

to the lender in association with an anonymous identifier of the borrower." '694 Patent, col. 19, 37-40; s*ee, also,* claim 26.  This illustrates that the concept of selective disclosure of personal information in claim 1 is not tied to anonymity, as some personal information can be disclosed to the lender while the party continues to remain anonymous.  Any effort to import "anonymity" as a requirement of the selective disclosure is improper and should be rejected.

For the reasons set forth herein, the Court should adopt Mortgage Grader's proposed construction.

### 4. "Without exposing any of said financial information of the borrower to any lender" ('694 Patent, Non-Asserted Claims 16, 23, and 31)

This term is found only in claims from the '694 patent that have not been asserted in this action.  The parties' proposed constructions are set forth below:

| Mortgage Grader's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No Construction Necessary | Does not require construction and can be assigned its ordinary and customary meaning, which is: The borrower is anonymous to lender during the use of the system of claim 6 or the method of claim 19, until if or when the borrower authorizes disclosure of the borrower's identity. |

As explained above, Mortgage Grader has proposed that no construction is necessary, as the plain and ordinary meaning of the terms should control.  Moreover, this limitation is found only in non-asserted claims, and the Court should exercise its discretion not to construe the claim term.  *See, e.g., Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("O]nly those [claim] terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").  To the extent that the Court considers this limitation,

1  Defendants' proposed construction should be rejected for the reasons set forth

2  above in section IV.B.3.

3       **C.**    **"Loan Packages" ('694 Patent, Claims 1 and 19).**

4       This term is found in claims 1 and 19 of the '694 patent.  The parties'

5  proposed constructions for this term are set forth below:

| Mortgage Grader's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A collection of data about a specific loan program, such as type, interest rate and term | Does not require construction, can be given its ordinary and customary meaning, which is: "each loan package includes home loan information provided by a lender and guaranteed closing costs information for closing services not provided by the lender; and loan packages are identified without requiring the borrower to post a request to any lender." |

15       At its most fundamental level, a "loan package" is nothing more than

16  information about the specifics of the loan, such as the type of loan (purchase

17  mortgage, refinance or home equity loan), interest rate and term (length of the

18  loan).  It may, but need not, include additional items.  This is the fundamental

19  dispute between the parties – whether a "loan package" as defined by the

20  specification is broad, or whether it must narrowly be construed to require

21  "guaranteed closing costs" and other charges.  The term should not be construed so

22  narrowly.

23       The specification and other claims support Mortgage Grader's proposed

24  construction.  For example, Figure 4, box 406, shows "Loan Package Data For

25  Participating Lenders (Loan Type, Interest Rate, Fees, Required Borrower Credit

26  Grading"); '694 Patent, col. 15:4-23.  This shows the broad nature of loan package

27  data and nothing that requires the presence of guaranteed costs.

28

Defendants' construction should be rejected because they are impermissibly trying to import limitations from the specification into the claim. Their proposed construction improperly imports two concepts into the construction: (1) that the "loan package" must include "guaranteed closing costs information for closing services not provided by the lender;" and (2) that the loan package must be "identified without requiring the borrower to post a request to any lender." This Court should reject Defendants' effort to read limitations from the specification into the claims, which is contrary to the fundamental principles of claim construction. *Thorner* at 1366 ("[w]e do not read limitations from the specification into the claims"). Nothing in the specification or the prosecution history defines "loan package" as requiring guaranteed closing costs – these are described as an "optional" or "preferred" features in specification citations identified by Defendants in the Joint Claim Construction Statement. *See, e.g.,* '694 patent, col. 14:18-19 ("the closing costs of block 302 may or may not also be locked-in"); 16:60-62 ("The costs associated with the loan are *preferably, but optionally* also guaranteed, preferably by the lender but possibly by an unrelated third party that provides or arranges the various services associated with the closing of the loan transaction.") (emphasis added). Optional features should not be read from the specification into the claim, and the Court should reject these efforts. *SanDisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278, 1286 (Fed. Cir. 2005) ("It is axiomatic that without more the court will not limit claim terms to a preferred embodiment described in the specification.")

In addition, Defendants' proposed construction requiring guaranteed closing costs should be rejected because it violates principles of claim differentiation. Dependent claim 4, which depends from claim 1, requires the "loan package" to include: "guaranteed closing costs." '694 Patent, claim 4. Under the doctrine of claim differentiation, the Court should not adopt a construction that would render a dependent claim meaningless. *Curtiss-Wright,* 438 F.3d at 1380. Yet that is what

1    Defendants seek.  Because the Defendants' proposed construction of "loan

2    package" violates the doctrine of claim differentiation, the Court should reject their

3    construction.

4          Finally, the other aspect of Defendants' proposed construction is simply

5    unsupported.  There is no support in the specification for a construction connecting

6    the definition of a loan package – the information about a particular loan *provided*

7    *to the consumer* – with the timing of disclosure of consumer information to the

8    lender.  These are disconnected concepts that should not be related in the claim

9    construction.

10         The Court should reject Defendants' efforts to read claim limitations into the

11   term "loan package" and should adopt Mortgage Grader's proposed construction.

12   **D.**      **"Guaranteed closing cost information/guaranteed closing cost**
             **information for closing services not provided by the lender" ('694**
13           **Patent, Claim 19).**

14         These terms are found only in asserted claim 19 of the '694 patent.  The

15   parties' proposed constructions for these terms are set forth below:

| Mortgage Grader's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| One or more closing costs provided by a third party are guaranteed to be a particular amount | Does not require construction, can be given its ordinary and customary meaning, which is: "guaranteed closing cost information includes closing services not provided by the lender" |

22         At the outset, Mortgage Grader does not dispute that the guaranteed cost

23   referenced in claim 19 must be for a service "not provided by the lender."  That

24   language is explicitly in the claim, and was included in the term for construction by

25   Mortgage Grader.  The real issue for this limitation is whether the "guaranteed

26   closing costs" must include *all non-lender* closing costs, or whether it is sufficient

27   that only some of the third party (*i.e.,* non-lender) costs be guaranteed.

28

- 19 -

1   The specification supports Mortgage Grader's proposed construction.  It
2   describes a system that operates with flexibility, and that can include guarantees of
3   none, some or all of the third party costs depending on the desires of the party
4   running the platform.  For example, the patent specification describes disclosing
5   costs related to the loan (called wrapped information) to the consumer or loan
6   applicant.  In particular, the patent specification states that:

7   "Preferably from the third party's viewpoint, the costs of
8   *some or all* of the wrapped data are guaranteed but within
9   a predetermined variance rate, such as 5%, preferably
10   10% or more preferably 15%.  That permissible variance
11   may apply to *some or all* of the wrapped data, but is more
12   likely to apply to only some specific items, such as for
13   example, per diem interest, hazard insurance and escrow
14   impounds."

15   '694 Patent, col. 12:56-63.  This clear disclosure shows that the reference to
16   guaranteed costs can refer to some or all of the costs, consistent with Mortgage
17   Grader's proposed construction.

18   Defendants do not propose a construction beyond the fact that the
19   "guaranteed cost" must include a third party cost, something, as noted above,
20   Mortgage Grader does not dispute.  Accordingly, the Court should adopt Mortgage
21   Grader's proposed construction of the "guaranteed costs" term.

22   **E.   "Anonymous" ('694 Patent, Claim 1).**

23   This term is found in asserted claim 1 of the '694 patent.  It is not used in
24   asserted claim 19 of the '694 patent, nor is it used in asserted claim 6 of the '728
25   patent.  The term is also found in non-asserted claims 3 and 4 of the '728 patent.
26   The parties' proposed constructions for this term are set forth below:

27

28

| Mortgage Grader's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| **['694 Patent]:** No construction necessary | **['694 Patent]:** Does not require construction, can be given its ordinary and customary meaning, which is: Claim 1: The system permits "the borrower to search the database to identify a set of loan packages for which the borrower qualifies based on the credit grading, and to compare the loan packages within the set, including loan type and interest rate, while remaining anonymous to each of the lenders and **without having to post a request to any of the lenders**."<br><br>Claim 19:  The method identifies the set of loan packages "**without requiring the borrower to post a request to any lender;** outputting information regarding the set of loan packages, including the guaranteed closing cost information for closing services not provided by the lender, to the borrower via a user interface that enables the borrower to at least compare total costs of the loan packages for which the borrower qualifies, said user interface additionally providing functionality for the user to select and apply for one of said loan packages; and in response to a request from the borrower in association with a selected loan package." |
| **['728 Patent]:**  No construction necessary | **['728 Patent]:** Does not require construction, can be given its ordinary and customary meaning, which is: "none of the received personal information of the borrower is released to any of the lenders without specific authorization from the borrower; and the method of claim 6 is conducted 'without exposing any personal information to any of the lenders without specific authorization.'" |

Mortgage Grader has proposed that the term "anonymous" need not be construed, as it has a plain meaning that has not been varied by the patent specification or the prosecution history.  An example of this well-known meaning can be found in Merriam-Webster's Dictionary, which defines anonymous as "not named or identified."  Kaufman Decl., Exh. 3.  There has been no redefinition of

1  this term by the intrinsic record, and no disclaimer of subject matter that would

2  result in a more narrowed construction of the term. *Thorner*, 699 F.3d at 1365-66

3  (to limit a term to something other than its ordinary meaning, at patentee must

4  either "set out a definition and [act] as his own lexicographer," or "disavow the full

5  scope of a claim term either in the specification or during prosecution.")

6      Despite the fact that the two patents share parts of a common specification,

7  Defendants, as they did with "credit grading," have proposed two separate

8  constructions for the same term.  As with a number of their other proposed

9  constructions, the Defendants state that the term does not need to be construed and

10 should be given its ordinary and customary meaning, but then propose a definition

11 inconsistent with both the ordinary meaning and the intrinsic record.  These

12 constructions should be rejected.

13      **1.    Defendants' Construction of "Anonymous" for the'694**
14          **Patent Should Be Rejected.**

15     For the '694 patent, Defendants' definition is nothing more than a quotation

16 of language from claim 1 and 19 of the '694 patent. Dkt. 40-1 at 4-5.[5]  The crux of

17 Defendants' proposed construction is the highlighted language from each claim

18 passage "without having to post a request to any of the lenders." *Id.*  This

19 construction is inconsistent with the ordinary meaning of the term, as well as its

20 usage in the specification, and should be rejected.

21     To support their definition, Defendants cite several portions of the patent

22 specification.  However, none of the portions of the specification cited by

23 Defendants redefine "anonymous" in the manner they propose, nor do they reveal

24 disclaimed subject matter.  To the contrary, they simply use the word anonymous in

25 a manner consistent with its ordinary meeting – as found in a dictionary.  For

26 _____

27 [5] The citation from claim 19 should not be relied upon because claim 19 does not
   even contain the term anonymous, and the Court should not read conditions of
28 anonymity into the claim.

example, Defendants identify column 13, lines 26 through 44 as supporting their proposed construction.  Yet this passage discusses an implementation of the process where all consumer data can be provided to the proposed lender selected by the consumer, or where the lender proceeds anonymously using a PIN number and just provides limited information to the lender.  The patent refers to this as shopping anonymously, and uses it in the conventional sense – the consumer can provide everything, including their name, or can proceed anonymously by using a PIN number rather than their name.  In the absence of any clear disavowal or redefinition, the Court should not redefine the term "anonymous" in the manner proposed by Defendants.

### 2.     Defendants' Construction of "Anonymous for The '728 Patent Should Be Rejected.

The term anonymous does not appear in any asserted claim of the '728 patent, and thus, in the interest of efficiency, the Court should not construe the claim. *See, e.g., Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

In the event that the Court decides to construe the term, the Court should reject Defendants' proposed construction and adopt Mortgage Grader's.  Once again, Defendants contend that the term "anonymous" does not need construction, but then provide a construction that seeks to add two limitations to the construction: (1) that "none of the received personal information of the borrower is released to any of the lenders without specific authorization from the borrower;" and (2) that "the method of claim 6 is conducted 'without exposing any personal information to any of the lenders without specific authorization.'"  Dkt. 40-1 at 3.

Like their definition of for the '694 patent, Defendants' proposed construction should be rejected because it impermissibly redefines the term without the required clear and unambiguous definition or disclaimer of meaning. *Thorner*, 669 F.3d at 1365-66.  The cited passages of the specification do not redefine the

word "anonymous."  The second part of the construction refers to claim 6, yet the term "anonymous" is not used in claim 6, and the Court should not import unidentified limitations from claim 6 into other claims, or vice versa.

In short, Defendants have not met the high burden necessary to redefine an ordinary term, and the intrinsic record does not support its redefinition.  The Court should adopt Mortgage Grader's construction of anonymous.

## V.    CONCLUSION

For the reasons set forth herein, Mortgage Grader respectfully requests that the Court adopt its proposed claim constructions.


Dated:  March 7, 2014                    FREITAS TSENG & KAUFMAN LLP


                                         _/s/Craig R. Kaufman_
                                         Craig R. Kaufman
                                         Attorneys for Plaintiff
                                         Mortgage Grader, Inc.