Craig R. Kaufman (SBN 159458)
ckaufman@tklg-llp.com
Michael C. Ting (SBN 247610)
mting@tklg-llp.com
TECHKNOWLEDGE LAW GROUP LLP
100 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:  (650) 517-5200

*Attorneys for Plaintiff*
Mortgage Grader, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTGAGE GRADER, INC.<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION; FIRST CHOICE LOAN SERVICES, INC.; AND NYLX, INC.<br><br>Defendants. | Case No.  8:13-cv-00043-AG-AN<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE DEFENDANTS' NEW PRIOR ART AND SECTION 101 DEFENSES AND CONTINGENT MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  October 27, 2014<br>Time: 10:00 a.m.<br>Location:  Courtroom 10D |

To Defendants herein and their attorneys of record:

Please take notice that on October 27, 2014 at 10:00 a.m., or as soon as the

matter can be heard before the Honorable Andrew J. Guilford, in Courtroom 10D of

the United States Courthouse, located at 411 West Fourth Street, Santa Ana, CA

92701, Plaintiff Mortgage Grader, Inc. hereby moves for an order striking

Defendants' final invalidity contentions to the extent that they raise new arguments

unsupported by good cause, to strike those portions of Defendants expert reports

relying on such references, and to order that Defendants may not raise any excluded defenses at trial.

In the event that the Court does not strike the challenged prior art, Mortgage Grader moves for summary judgment that Provisional Application 60/180,013 is not prior art.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities submitted herewith, the Declaration of Craig Kaufman, and Exhibits 1-13 submitted therewith.

This motion is made following the conference of counsel pursuant to L.R. 7-3, the most recent of which took place on September 10, 2014.

Respectfully submitted,

Dated:  September 24, 2014          TECHKNOWLEDGE LAW GROUP LLP


                                            */s/ Craig R. Kaufman*
                                   Craig R. Kaufman

                                   *Attorneys for Plaintiff*
                                   Mortgage Grader, Inc.

1   Craig R. Kaufman (SBN 159458)
2   ckaufman@tklg-llp.com
    Michael C. Ting (SBN 247610)
3   mting@tklg-llp.com
4   TECHKNOWLEDGE LAW GROUP LLP
    100 Marine Parkway, Suite 200
5   Redwood Shores, California  94065
6   Telephone:  (650) 517-5200

7   *Attorneys for Plaintiff*
    Mortgage Grader, Inc.
8

9

10                  UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA
11

12

13  MORTGAGE GRADER, INC.         Case No.  8:13-cv-00043-AG-AN

14          Plaintiff,            **MEMORANDUM OF POINTS AND**
                                  **AUTHORITIES IN SUPPORT OF**
15      v.                        **PLAINTIFF'S MOTION TO STRIKE**
                                  **NEW INVALIDITY CONTENTIONS**
16  COSTCO WHOLESALE              **AND CONTINGENT MOTION FOR**
    CORPORATION; FIRST CHOICE     **SUMMARY JUDGMENT**
17  LOAN SERVICES, INC.; AND
    NYLX, INC.
18                                Date:  October 27, 2014
            Defendants.           Time: 10:00 a.m.
19                                Location:  Courtroom 10D

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2
Page(s)

3   I.      INTRODUCTION ................................................................................. 1

4   II.     STATEMENT OF FACTS.................................................................... 3

        A.      The '694 and '728 Patents ....................................................... 3
5
        B.      Defendants' Initial Invalidity Contentions ............................. 4
6
        C.      Defendants' Final Infringement Contentions And Expert
7               Reports. .................................................................................... 5

8       D.      The Prosecution of the NYLX Patent Applications. ............... 7

    III.    ARGUMENT. ...................................................................................... 8
9
        A.      This Court's Standing Patent Rules Require Good Cause To
10              Add New Art. ........................................................................... 8

11          1.      No Good Cause Exists To Add The New Prior Art. ...... 11

12          2.      No Good Cause Exists to Permit Defendants To Add A
                    Section 101 Defense ..................................................... 13
13
        B.      If This Court Denies The Motion To Strike, It Should
14              Nonetheless Grant Summary Judgment That The Elite Agents
                Provisional Application Is Not Prior Art. ............................. 15
15
            1.      The Elite Agents Provisional Application Is Not Prior Art
16                  Under Section 102(a). ................................................... 11

17          1.      The Elite Agents Application Is Not Prior Art Under
                    Section 25 U.S.C. §102(c) ............................................ 20
18
    IV.     CONCLUSION. ............................................................................... 21
19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alice Corp. Pty., Ltd. v. CLS Bank, Int'l et al.*,
134 S. Ct. 2347 (2014) ............................................................... 2, 13, 14

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ...................................................................... 15

*Apple, Inc. v. Samsung Elec. Corp.*,
2012 WL 1067548 (N.D. Cal. 2012) ............................................. 9, 10

*In re Klopfenstein*,
380 F.3d 1345 (Fed. Cir. 2004) ....................................................... 16

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
132 S. Ct. 1289 (2012) ..................................................................... 13

*Microsoft Corp. v. i4i Ltd. Partnership*,
131 S. Ct. 2238 (2011) ..................................................................... 16

*MyMedicalRecords, Inc. v. Walgreen Co.*,
2013 WL 6834639 (C.D. Cal. 2013) ....................................... 12, 14, 15

*O2 Micro Intern Ltd. v. Monolithic Power Systems, Inc.*,
467 F.3d 1355 (2006) ........................................................................ 10

*Ormco Corp. v. Align Technology, Inc.*,
463 F.3d 1299 (Fed. Cir. 2006) ........................................................ 17

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
637 F.3d 1269 (Fed. Cir. 2011) ................................................... 11, 19

*Suffolk Technologies, LLC v. AOL, Inc.*,
752 F.3d 1358 (Fed. Cir. 2014) ................................................... 16, 17

*Sunpower Corp. Sys. V. Sunlink Corp.*,
2009 WL 1657987 (N.D. Cal. 2009) ............................................. 9, 10

*West v. Jewelry Innovations, Inc.*,
2008 WL 4532558 (N.D. Cal. 2008) ............................................ 10, 12

# TABLE OF AUTHORITIES

Page(s)

*Woodland Trust v. Flowertree Nursery, Inc.*
    148 F.3d 1368 (Fed. Cir. 1998) .................................................................... 17, 20

## Statutes

35 U.S.C. § 101 ............................................................................................ *passim*

35 U.S.C. § 102 ......................................................................................................... 2

35 U.S.C. § 103 ....................................................................................................... 14

35 U.S.C. §§ 102(a) ...................................................................................... *passim*

35 U.S.C. §102(e) ................................................................................... 2, 3, 16, 20

35 U.S.C. 122 .......................................................................................................... 17

35 U.S.C. 122(a) ..................................................................................................... 18

35 U.S.C. § 122(b) ........................................................................................ *passim*

35 U.S.C. 122(b)(2)(B)(i) ......................................................................................... 7

35 U.S.C. 282 .......................................................................................................... 15

## Other Authorities

37 C.F.R. 1.14 ........................................................................................................ 18

Fed. R. Civ. P. 56(c) .............................................................................................. 15

## I.    INTRODUCTION

In their Final Invalidity Contentions served pursuant to Standing Patent Rule 4.2 and the corresponding expert reports submitted by Defendants' corporate officers, Defendants for the first time contend:

- The asserted claims are anticipated by provisional patent application 60/180,013 (the "Elite Agents Provisional Application") to which applications owned by Defendant NYLX claim priority; and

- The asserted claims are anticipated by published patent application 2004/0002915 naming McDonald as an inventor, which was used to reject two NYLX patent applications during prosecution before the U.S. Patent and Trademark Office.

Further, Defendants' Final Invalidity Contentions contend that the asserted claims are not statutory subject matter under Section 101, although this defense is not explained in any of Defendants' expert reports.  The new art, the Section 101 defense, and all arguments or expert reports based thereon should be stricken because no good cause exists to add them at this late date.

The two cited prior art documents have long been known to Defendant NYLX.  The Elite Agents Provisional Application names NYLX's CEO and expert, Howard Conyack, as an inventor and was ultimately owned by Defendant NYLX.  The McDonald application was prior art used to reject two of Mr. Conyack's patent applications that claimed priority to the original Elite Agents

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)

Provisional Application.  All of these actions occurred before 2006.  NYLX has known about this art for years and thus, no good cause exists to add this art now. Where the prior art is owned by the Defendant, good cause cannot excuse a failure to identify that art in a timely manner.

With respect to the newly raised Section 101 defense, Defendants affirmatively disavowed any allegation of invalidity under 35 U.S.C. § 101 in their Initial Invalidity Contentions, stating the "Defendants *do not* present any grounds of invalidity based on 35 U.S.C. § 101 . . . of any of the asserted claims at this time."  Kaufman Decl. Ex. 4 at 12 (emphasis added).  This admission should foreclose their ability to change course at this late date.  The Supreme Court's decision in *Alice Corp. Pty., Ltd. v. CLS Bank, Int'l et al.*, 134 S. Ct. 2347 (2014) did not change the law of patentable subject matter, and thus, the issuance of this opinion in June 2014 does not establish good cause for Defendants' efforts to resurrect their waived Section 101 defense.

Should this Court choose not to strike the new invalidity defenses, it should nonetheless enter summary judgment that the Elite Agents Provisional Application is not prior art.  Neither the Conyack report, nor Defendants' Final Invalidity Contentions, state how the Elite Agents Provisional Application is prior art under 35 U.S.C. § 102.  During the meet and confer process required by the local rules, Defendants asserted that the Elite Agents Provisional Application is prior art under 35 U.S.C. §§ 102(a) and 102(e).   Not so.

Public availability is the touchstone for determining whether a document is a printed publication under Section 102(a).  By statute and PTO rule, the Elite Agents Provisional Application was confidential when filed, and remained so for more than 5 years.  It did not become available to the public until December 2005, three years after the Lazerson patents' filing dates, when a NYLX-owned patent application claiming priority to the Elite Agents Provisional Application was published.

Nor is the Elite Agents Provisional Application prior art under Section 102(e).  This provision applies only to patents and applications that are published pursuant to the provisions of 35 U.S.C. § 122(b).  Provisional applications are not published under this statutory section.  Accordingly, the Elite Agents Provisional Application does not meet the statutory definition for prior art under Section 102(e).

## II.    STATEMENT OF FACTS

### A.    The '694 and '728 Patents

The '694 and '728 patents relates to computer implemented systems and methods that allow individuals to shop for mortgages online.  Kaufman Dec. Exs. 1 and 2.  Mortgage Grader has accused defendants of infringing system claims 1 and 2 from the '694 patent, and method claim 19 from the '694 patent.  The only asserted claim from the '728 patent is claim 6. The '728 Patent was filed on May 6, 2002.  Kaufman Dec. Ex. 2.  The '694 patent was filed on July 9, 2002, but claims

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)

priority as a CIP to the '728 patent's filing date of May 6, 2002.  Kaufman Dec. Ex.

2.

### B.      Defendants' Initial Invalidity Contentions

By Order dated August 30, 2013, this Court made its Standing Patent Rules

applicable to this case.  Dkt. 25.  On December 20, 2013, Defendants' served their

Initial Invalidity Contentions.  Kaufman Dec. Ex. 4.

In responding to S.P.R. 2.5.4, which seeks information about non-prior art

defenses, including Section 101, defendants stated:

> The Defendants *do not present* any grounds of invalidity based
> on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. §
> 112(2)/(b), or enablement or written description under 35
> U.S.C. § 112(1)/(a) of any of the asserted claims at this time.
> The final claim construction may require such an assertion of
> invalidity.

Kaufman Dec. Ex. 4 at 8.  (emphasis added).

The Defendants Initial Invalidity Contentions also disclosed prior art

references, identifying 4 U.S. Patents, five U.S. Published Patent Applications, and

two publications that were not cited during prosecution of the patents-in-suit.

Kaufman Dec. Ex. 4 at 2-3.  The defendants made the following specific invalidity

contentions:

- "Each and every claim of the '694 patent is anticipated or rendered
  obvious by U.S. Patent No. 6,823,319 to Lynch"

- "Each and every claim of the '728 patent is anticipated or rendered
  obvious by U.S. Published Patent Application No. US2007/0043654

to Libman"

- "Claims 1 through 4, 6 through 11, 14 through 16, 19 through 24, 26, 27, and 31, 32, 35, and 36 are made obvious by the Lynch patent in view of the Libman application."

- "Claims 1 through 6 are made obvious by the Lynch Patent in view of the Libman Application."

Kaufman Dec. Ex. 4 at 7.  Charts for the Libman and Lynch applications were attached, as required by the standing patent rules.

**C.     Defendants' Final Infringement Contentions And Expert Reports.**

On August 15, 2014, Defendants served their Final Invalidity Contentions pursuant to Standing Patent Rule 4.2.  The Final Invalidity Contentions identified 16 new references, and recited the following new invalidity assertions based thereon:

- Anticipation or obviousness of claims 1, 2 and 19 of the '694 patent and claim 6 of the '728 patent by the Elite Agents Provisional Application;

- Anticipation or obviousness of claims 1, 2 and 19 of the '694 patent and claim 6 of the '728 patent by U.S. Patent Application No. 09/777,179 to Dunn et. al. (the "Elite Agents Application.");

- Anticipation or obviousness of all claims of the '694 and '728 patents

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)

by the McDonald published application;

- Anticipation or obviousness of claims 1, 2 and 19 of the '694 patent and claim 6 of the '728 patent by each of the 1989 Mortgage Rate Charts published by the Washington Post, Chicago Tribune and the Baltimore Sun; and

- Obviousness each claim of the '694 and the '728 patents by "the McDonald application and the Elite Agents provisional application in view of the three newspaper Mortgage Rate Charts or the Lynch patent or the Libman application or the Elite Agents application.

Kaufman Dec. Ex. 3 at 7-9.  The Final Invalidity Contentions also added an assertion that the claims were invalid as non-statutory subject matter under Section 101.  *Id.* at 11.

In addition to serving final invalidity contentions pursuant to Standing Patent Rule 4.2, Defendants served invalidity reports authored by Howard Conyack, the CEO of Defendant NYLX, and Norman Koenigsberg, the President and CEO of Defendant First Choice.  Kaufman Dec. Exs. 5 and 6.  In his report, Mr. Conyack expresses his opinion that all asserted claims are invalid because they are 'read on' by the Elite Agents Provisional Application and the McDonald Application. Kaufman Dec. Ex. 5 at 23.[1]   Mr. Conyack's report contains no other invalidity

---

[1] Mortgage Grader interprets the term 'read on' to mean that Mr. Conyack contends that the claims are anticipated by the cited art.  Mr. Conyack does not include any

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)

analysis, and contains no explanation or analysis of any Section 101 issues.

Kaufman Dec. Ex. 5.

Mr. Koenigsberg's report, while including a section entitled "Invalidity," does not include any substantive invalidity discussion.  Kaufman Dec. Ex. 6 at 12—13.  The "Invalidity" section of Mr. Koenigsberg's report does not compare the claims to any prior art.  *Id.* Nor does it apply any recognized test for patentable subject matter to the claims.  *Id.*

D.     **The Prosecution of the NYLX Patent Applications**.

Provisional application 60/180,013 was filed in the U.S. Patent Office on February 3, 2000.  Kaufman Dec. Ex. 7.  It identifies five named inventors, including Mr. Conyack.  *Id.* at DEFENDANTS000365.

On February 5, 2001, U.S. Patent No. 09/777,179 was filed claiming priority to the earlier filed '013 provisional application.  Kaufman Dec. Ex. 8 at DEFENANTS000435.  Like the '013 provisional document, the '179 application names Howard Conyack as an inventor.  *Id.* at DEFENDANTS000438.  Pursuant to 35 U.S.C. 122(b)(2)(B)(i), the applicants requested that the PTO not publish their application.  *Id.* at DEFENDANTS000437.  On January 30, 2006, the PTO issued an office action rejecting the pending claims in the application.  Four claims (31-34) were rejected under Section 101 as being directed to non-statutory subject

obviousness discussion in his report, nor does he analyze the required *Graham* factors.

matter, and the claims were rejected as unpatentable over the McDonald Published Application. *Id.* at  DEFENDANTS000554 - 561.  On February 20, 2007, the PTO issued a final office action again rejecting the claims as unpatentable under Section 101 and in view of the McDonald Published Application.  Kaufman Dec. Ex. 8 at DEFENDANTS000514 - 528.  After this rejection, the applicants abandoned the application.  *Id.* at DEFENDANTS000513.

On July 1, 2005, a continuation-in-part application, serial no. 11/174,440, was filed.  Kaufman Dec. Ex. 9.  This application was published by the PTO on December 29, 2005 as published patent application 2005/0289046.  *Id.*  According to PTO records, this patent application was assigned to Defendant NYLX. Kaufman Dec. Ex. 13.  The application did not issue as a patent, but went abandoned because NYLX did not respond to an office action.  Kaufman Dec. Ex. 10.  The '046 patent publication was not relied upon as prior art in Mr. Conyack's report, nor was it cited or charted in Defendants Final Invalidity Contentions. Kaufman Dec. Ex. 5 (Conyack report at 22-64); Ex. 3 (Final Invalidity Contentions at 2-3).

## III.   ARGUMENT

### A.   This Court's Standing Patent Rules Require Good Cause To Add New Art.

The Court's Standing Patent Rules permit the submission of Final Invalidity Contentions at the same time as expert reports on invalidity are served.  The Final

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)

Invalidity Contentions may amend the Initial Invalidity Contentions, but these amendments "are subject to a good cause standard."  The rule also provides that if a party receiving invalidity contentions "believes that amendments were made without a good cause, it may move the Court to strike them."  S.P.R. 4.2.  The Court provides some examples of good cause sufficient to permit amendment: "claim construction by the Court different from that proposed by the party seeking amendment, or recent discovery on material prior art that was not discovered, despite diligent efforts, before the service of the Invalidity contentions."  S.P.R. 4.2.2. None of these permissible excuses exist here.

Over more than 10 years, the Northern District of California has developed a body of law explaining the requirements of "good cause" necessary to permit new prior art to be added to invalidity contentions.[2]   *See, e.g., Apple, Inc. v. Samsung Elec. Corp.,* 2012 WL 1067548, *1-2 (N.D. Cal. 2012); *Sunpower Corp. Sys. V. Sunlink Corp.*, 2009 WL 1657987, *1 (N.D. Cal. 2009).   Fundamentally, to satisfy the requirement of "good cause" a party must show: (1) that it acted diligently; and (2) there is no prejudice to the other party.  *Apple,* 2012 WL 10674548 at *1-2. "Only if the moving party is able to show diligence may the court consider the

---

[2] This Court's definitions of good cause track the acceptable excuses recognized by other courts as justifying amendment of invalidity contentions.  *See, e.g,* N.D. Cal. Pat. Local Rule 3-6 (good cause for amending contentions includes "a claim construction by the Court different from that proposed by the party seeking amendment" and "recent discovery of material, prior art despite earlier diligent search.").

prejudice to the non-moving party." *Id.*   Under the Northern District precedent, as approved by the Federal Circuit, the party seeking to amend bears the burden of establishing diligence. *O2 Micro Intern Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d  1355, 1366-67 (2006).  This Court should similarly place the burden of establishing diligence on the party seeking to establish good cause.

One component of diligence in the Northern District's jurisprudence is whether the party has been diligent in discovering the prior art. *West v. Jewelry Innovations, Inc.,* 2008 WL 4532558, *2 (N.D. Cal. 2008) ("Thus, a party's diligence in amending its preliminary invalidity contentions upon finding new prior art is only one factor to consider; the Court also must address whether the party was diligent in discovering the basis for the proposed amendment."); *Apple*, 2012 WL 1067548 at *6 ("Samsung has, therefore, failed to meet its burden of establishing that it proceeded with diligence in uncovering the GlidePoint [prior art]"); *Sunpower*, 2009 WL 1657987, *1 ("the critical issue is whether or not Defendant exercised diligence in discovering the prior art.").[3]  A lack of diligence in locating the prior art should be sufficient to warrant striking new art under this Court's Standing Patent Rules.

Defendants have not acted diligently and thus, no good cause exists permitting them to add either the newly cited prior art or the Section 101 defense.

---

[3] The other aspect of diligence under Northern District jurisprudence – promptly seeking leave to amend – does not appear to apply under this Court's rules, which permit service of amended contentions without leave of court.

**1.      No Good Cause Exists To Add The New Prior Art.**

Defendants Final Infringement Contentions identify 16 new references, including the only art relied upon by Mr. Conyack in his expert report.  Given the disclosures in Mr. Conyack's expert report, the Court should focus on the two references that provide the basis for his invalidity theories, because these are the only theories that Defendants would be permitted to advance at any trial.  *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1287 (Fed. Cir. 2011) (Finding that "the district court did not abuse its discretion by ruling that… [the expert] could not testify on matters not disclosed in his expert report or deposition." (alteration to original)**.** The two prior art references analyzed by Mr. Conyack are:

- •      The Elite Agents Provisional Application; and

- •      The McDonald Published Application.

Kaufman Dec. Ex. 5 at 21-64.[4]

To justify their amendments, Defendants made the following statement of good cause:

> All additions to any sections of this statement of Final
> Invalidity Contentions are caused by newly discovered
> material prior art despite earlier diligent search, before the
> service of the Invalidity Contentions.  The new
> information includes the Elite Agents provisional
> application and its formal application.  The failed
> prosecution of the formal application produced the newly

---

[4]Of course, the other 14 new prior art references should also be stricken.

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)

1
2
> disclosed references above with the most notable being
> the McDonald application and patents.

3    Kaufman Dec. Ex. 3 at 10.  This boilerplate recitation does not establish good

4
5    cause, particularly with respect to the Elite Agents Provisional Application and the

6    McDonald publication relied on by Mr. Conyack.

7         The Elite Agents Provisional Application names Mr. Conyack as an inventor

8
9    and applications claiming priority therefrom were assigned to NYLX.  Kaufman

10   Dec. Ex. 8.  It is hard to believe that NYLX did not know of its own patent

11   applications long before this action was filed.  Likewise, NYLX surely knew of the

12
13   prior art cited in its own patent application.  The McDonald publication was cited

14   by the PTO to reject claims in the '179 application in 2006.  Kaufman Dec. Ex. 8.

15   Because NYLX clearly knew about both its own applications, as well as the art

16
17   used to reject its claims, Defendants failure to cite these documents in the initial

18   invalidity contentions should not be excused.  *West v. Jewelry Innovations, Inc.*,

19   2008 WL 4532558, *4 (N.D. Cal. 2008) ('carelessness is not compatible with a

20
21   finding of diligence and offers no reason for a grant of relief'), *citing, MEMC Elec.

22   Mat'ls. V. Mitsubishi Mat'ls. Silicon Corp.,* 2004 WL 5363616 at *5 (N.D. Cal.

23   2004); *MyMedicalRecords, Inc. v. Walgreen Co.,* 2013 WL 6834639, *4 (C.D. Cal.

24
25   2013) (Denying motion to amend invalidity contentions to add new art where six of

26   the new references were cited in the patent at the heart of the litigation, and the

27   seventh new reference was Walgreen's own web site) .

28

### 2.      No Good Cause Exists to Permit Defendants To Add A Section 101 Defense

Standing Patent Rule 2.5.4 requires that a party to state whether it is going to rely on the patentable subject matter limitations in Section 101 as a defense.  SPR 2.5.4.  Defendants affirmatively waived this defense in their Initial Invalidity Contentions.  Kaufman Dec. Ex. 4 at 8. ("Defendants do not present any grounds of invalidity based on 35 U.S.C. § 101.").  Now Defendants are attempting to retreat from this disavowal of Section 101 without good cause.

Defendants identify one event as providing "good cause" – the Supreme Court's June decision in *Alice Corp. v. CLS Bank Int'l.,* 134 S. Ct. 2347 (2014).  Kaufman Dec. Ex. 4 at 11.  Not so.  While obviously a new Supreme Court decision could, under appropriate circumstances, create "good cause" justifying amendment of invalidity contentions, the Supreme Court's decision in *Alice* does not do so.  The Supreme Court in *Alice* did not significantly change the law surrounding Section 101.  To the contrary, the Supreme Court applied its existing precedent, relying on the framework it set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.,* 132 S. Ct. 1289 (2012).  *Alice*, 134 S. Ct. at 2355.  Alice simply does not create a Section 101 defense for Defendants where none existed before, nor did it materially modify the test for patentable subject matter.  Indeed this has been recognized by commentators post-*Alice.*  Professor Crouch, writing in his Patently-O blog, described the *Alice* decision as one that "fits within

that precedent as an incremental addition, but without rejecting or even modifying

the Supreme Court's own prior precedent."  Kaufman Dec. Ex. 11 (Finding the

limits of ineligibility, Sept. 15, 2014).

Nor did Defendants profess a lack of awareness of Section 101 prior to the

*Alice* decision.  To the contrary, Defendants' pled that the asserted patents are

"invalid for failure to comply with the statutory requirements for patentability set

forth in 35 U.S.C. §§ 101, 102, 103 and/or 112."  Dkt. 34, ¶¶ 20, 24 (emphasis

added).  Notwithstanding this pleading, in their Initial Invalidity Contentions,

Defendants disavowed any defense under Section 101.  Kaufman Ex 4 at 8.  The

only reasonable conclusion is that Defendants made a tactical decision not to assert

Section 101 as a defense at some point between the time they filed their answer,

and the date they submitted their infringement contentions.  Having done so, and

lacking good cause for resurrecting the defense, the Court should strike their

Section 101 defense.

Indeed, the facts here are similar to those in *MyMedicalRecords,* 2013 WL

6834639.  In that case, Defendant Walgreen pled Section 101 in its answer.  *Id.* at

*4.  In its initial invalidity contentions, it did not raise a Section 101 defense, but

then sought to raise the Section 101 defense in supplemental invalidity contentions.

*Id.* at *1, *4.  The Court denied the motion to amend, concluding that since the

Defendant knew about Section 101 when it filed its answer, "it cannot claim it was

diligent in asserting them in its second round of invalidity contentions over five

months later." *Id.* at *4.

Defendants Section 101 defense should also be stricken because addition of the defense at this late date would prejudice Mortgage Grader.  While it has now attempted to assert Section 101 as a defense in its contentions, Defendants' expert reports contain no explanation of this defense.  Neither Mr. Conyack nor Mr. Koenigsberg state their understanding of the defense or why it should apply to the asserted claims.  In light of this failure, any effort to add the defense at this late date would prejudice Mortgage Grader, and provides further grounds to strike this defense.

**B.    If This Court Denies The Motion To Strike, It Should Nonetheless Grant Summary Judgment That The Elite Agents Provisional Application Is Not Prior Art.**

A motion for summary judgment shall be granted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate when there is no genuine issue of material fact, or when, drawing all factual inferences in favor of the non-moving party, no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  Material facts are those which "might affect the outcome of the suit under governing law." *Id.*

Issued patents are presumed valid.  35 U.S.C. 282.  A party challenging the validity of a patent must prove invalidity by clear and convincing evidence. *See*

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)

*Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2239 (2011).  As part of meeting that burden, the party must prove by clear and convincing evidence that the alleged invalidating activity qualifies as "prior art" under one of the provisions of Section 102.  "Whether an anticipatory document qualifies as a 'printed publication' under section 102 is a legal conclusion based upon underlying factual determination."  *Suffolk Technologies, LLC v. AOL, Inc.,* 752 F.3d 1358, 1364 (Fed. Cir. 2014); *In re Klopfenstein*, 380 F.3d 1345, 1347 (Fed. Cir. 2004)("Where no facts are in dispute, the question of whether a reference presents a 'printed publication' is a question of law.")

Defendants' expert reports and infringement contentions do not identify the category of prior art to which the Elite Agents Provisional Application belongs.  Kaufman Dec. Exs. 4, 5.  However, Defendants have contended in correspondence that the Elite Agents Provisional Application is prior art under 35 U.S.C. §§ 102(a) and 102(e).  Kaufman Dec. Ex. 12.  As explained below, the '013 Provisional Application does not qualify as prior art under either of these statutory subsections, and thus does not qualify as prior art.

**1.    The Elite Agents Provisional Application Is Not Prior Art Under Section 102(a)**

Section 102(a) defines prior art as something "was known or used by others in this country, or patented or described in a printed publication in this or a foreign country" before the invention claimed in the patent.  Thus Section 102(a) prior art

comes in two forms – a "printed publication" before the date of invention, or "known or used by others" before the date of the invention.  To qualify as a "printed publication," the document must be publicly available because this fact "is the touchstone in determining whether a reference constitutes a printed publication."  *Suffolk*, 752 F.3d at 1368; *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1305 (Fed. Cir. 2006)("Art that is not accessible to the public is generally not recognized as prior art.")  Likewise, any invalidating knowledge or use "must have been available to the public."  *Woodland Trust v. Flowertree Nursery, Inc.* 148 F.3d 1368, 1370 (Fed. Cir. 1998).

The Elite Agents Provisional Application is a document – thus its status as "prior art" under section 102(a) depends on whether it is a patent or a printed publication.

The Elite Agents Provisional Application is not a patent.  That is clear from its face, and indeed, Defendants do not contend it is a patent.

The Elite Agents Provisional Application was not a "printed publication" before the filing dates of the patents-in-suit.  It is undisputed that the Elite Agents Provisional Application was filed in 2000, but it is equally undisputed that the application was not publicly accessible at that time.  To the contrary, as an unpublished provisional patent application, the PTO was required to maintain the application in confidence.  35 U.S.C. 122 ("Except as provided in subsection (b), applications for patents shall be kept in confidence by the Patent and Trademark

Office"); 37 C.F.R. 1.14 ("Patent applications that have not been published under 35 U.S.C. 122(b) are generally preserved in confidence pursuant to 35 U.S.C. 122(a)").  Section 122(b) does not provide for the publication of provisional applications.  35 U.S.C. 122(b).   To the contrary, it explicitly excludes them from publication.  *Id.* ("[a]n application shall not be published if that application is – . . . (iii) a provisional application filed under section 111(b)." )

Because it was kept in confidence under PTO rules, the Elite Agents provisional application only became publicly available – the touchstone for anticipation under section 102(a) – once there has been publication of a patent or patent application claiming priority to the provisional application.  37 C.F.R. 1.14(a)(1)(v).  This did not occur until December 29, 2005, when U.S. Patent Publication No. 2005/0289046, a NYLX application claiming priority to the Elite Agents Provisional Application, was published.  Kaufman Dec. Ex. 9.  Thus, December 29, 2005 is the publication date of the Elite Agents Provisional Application.  This date, however, is more than three years *after* the filing dates for the patents in suit.  As such, the Elite Agents provisional application is not a prior art "printed publication" under section 102(a).

During the meet and confer process leading up to this motion, Defendants' contended that the Elite Agents Patent Application qualified as prior art because of prior use of this system.  Kaufman Dec. Ex. 7. But Defendants' Final Invalidity Contentions do not identify such a public use, citing only the filed patent

application.  Kaufman Dec. Ex. 3 at 3-4.  Nor does Mr. Conyack's expert report

cure this deficiency.  It contains no evidence or discussion of public use, beyond a

bald statement in his expert report that some software was used by Elite Agents in

1999.  Kaufman Dec. Ex. 5 (Conyack Report) at 21.  Neither the public nature of

any such use, nor the properties of the purportedly public software are explained in

the Conyack report.  *Id.*  Nor does Mr. Conyack provide any comparison of the

purportedly publicly used software and the claims.  *Id.*  Instead, the sole basis for

Mr. Conyack's invalidity opinions is a comparison between the asserted claims and

the Elite Agents Provisional Application.  Kaufman Dec. Ex. 5.

     Under this Court's patent rules, any prior public use theory should have been

disclosed in Defendants' initial and final invalidity contentions.  Moreover, Mr.

Conyack's expert report should have contained a full and complete explanation of

his theories on invalidity – yet it does not discuss any prior public use of the Elite

Agents system.  *See Siemens Med. Solutions USA,* 637 F.3d at 1287.  Having

failed to raise it earlier, Defendants should not now be permitted to contend that the

Elite Agents Patent application constitutes a public use of the claimed invention.

     Even if Defendants timely disclosed a defense based upon public knowledge

or use, which they did not, the motion should still be granted because Mr.

Conyack's testimony is insufficient, as a matter of law, to establish prior public use

of the Elite Agents system.  In his expert report, Mr. Conyack cites no documents

about the Elite Agents system other than the provisional patent application.  In the

absence of any evidence documenting the public availability of the system or its properties, the only possible evidence of public use would be the testimony of Mr. Conyack.  However, such oral testimony from an interested party is legally inadequate to meet Defendants' burden to show invalidity by clear and convincing evidence.  *Woodland Trust,* 148 F.3d at 1373 (Oral testimony regarding alleged prior use under section 102(a), without corroboration, did not provide the clear and convincing evidence necessary to invalidate a patent on the ground of prior knowledge and use under Section 102(a).).  Rather, corroboration is required.  Yet Mr. Conyack's report and Defendants' invalidity contentions contain no such corroboration.

### 2. The Elite Agents Application Is Not Prior Art under 35 U.S.C. §102(e)

Section 102(e) provides that an issued patent, or a patent application published pursuant to 35 U.S.C. 122(b), is available as prior art as of its effective filing date, so long as that filing date is before the invention date of the challenged patent.  35 U.S.C. 102(e).  The Elite Agents provisional application does not satisfy the criteria for prior art under this section – it is neither a published patent, nor is it an application for patent published under section 122(b).

The Elite Agents provisional application is not an issued patent.  Kaufman Dec. Ex. 8.  Thus, it does not qualify as prior art on that grounds.

Nor is it a published patent application pursuant to 35 U.S.C. 122(b).

Section 122(b)(2) provides that "[a]n application shall not be published if that application is – . . . (iii) a provisional application filed under section 111(b)."   It is undisputed that the Elite Agents Provisional application is a provisional application filed under Section 111(b), and thus it could not be published application under Section 122(b).

Because the Elite Agents Provisional Application is neither an issued patent nor a patent application published under Section 122(b), it does not qualify as prior art under this statutory subsection.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' newly added invalidity defenses should be stricken, and should not be raised or considered in any motions or at trial. In the alternative, this Court should grant summary judgment that the Elite Agents Provisional Application is not prior art.

Respectfully submitted,

Dated:  September 24, 2014          TECHKNOWLEDGE LAW GROUP LLP


                                                     */s/ Craig R. Kaufman*
                                                     Craig R. Kaufman
                                                     *Attorneys for Plaintiff*
                                                     Mortgage Grader, Inc.

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)

**PROOF OF SERVICE**

I am more than eighteen years old and not a party to this action. My place of employment and business address is 100 Marine Parkway, Suite 200, Redwood Shores, California 94065.

I further declare that on September 24, 2014, I filed the foregoing

- **NOTICE OF MOTION AND MOTION TO STRIKE DEFENDANTS' NEW PRIOR ART AND SECTION 101 DEFENSES AND CONTINGENT MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE NEW INVALIDITY CONTENTIONS AND CONTINGENT MOTION FOR SUMMARY JUDGMENT**

- **DECLARATION OF CRAIG KAUFMAN IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE NEW INVALIDITY CONTENTIONS AND CONTINGENT MOTION FOR SUMMARY JUDGMENT**

- **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFF'S CONTINGENT MOTION FOR SUMMARY JUDGMENT THAT THE "ELITE AGENTS" APPLICATIONS ARE NOT PRIOR ART**

- **[PROPOSED] ORDER TO PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' NEW PRIOR ART AND SECTION 101 DEFENSES**

with the Clerk of the Court using the CM/ECF systems, which will send notification of such filing counsel for Defendants:

| | |
|---|---|
| Benjamin Deming | Paul Grandinetti |
| DNL ZITO | Rebecca J. Stempien Coyle |
| 355 South Grand Avenue | LEVY & GRANDINETTI |
| Suite 2450 | 1120 Connecticut Avenue, N.W. |
| Los Angeles, CA 90071 | Suite 304 |
| bdeming@dnlzito.com | Washington, District of Columbia 20036 |
| | mail@levygrandinetti.com |

*Counsel for Defendants Costco Wholesale Corporation, First Choice Loan Services, Inc. and NYLX, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on September 24, 2014 at Redwood Shores, California.


/s/ *Craig R. Kaufman*
Craig R. Kaufman

Ntc of Mtn to MTS and MSJ and MP&A ISO
Case No. 13-cv-00043-AG (AN)