UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTGAGE GRADER, INC., <br><br> Plaintiff, <br><br> v. <br><br> COSTCO WHOLESALE CORPORATION, FIRST CHOICE LOAN SERVICES, INC., and NYLX, INC. <br><br> Defendants. | CASE NO. SACV 13-00043 AG (ANx) <br><br> **ORDER GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' NEW PRIOR ART AND SECTION 101 DEFENSES AND CONTINGENT MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Plaintiff Mortgage Grader, Inc. ("Plaintiff") alleges that Defendants Costco Wholesale Corporation ("Costco"), First Choice Loan Services, Inc. ("First Choice"), and NYLX, Inc. ("NYLX") (collectively, "Defendants") have infringed U.S. Patent Nos. 7,680,728 ("'728 Patent") and 7,366,694 ("'694 Patent"), both titled "Credit/Financing Process" (collectively, the "Asserted Patents"). The Asserted Patents cover computer implemented systems and methods that allow individuals to shop for mortgages online.

Plaintiff filed a Motion to Strike Defendants' New Prior Art and Section 101 Defenses and Contingent Motion for Summary Judgment (the "Motion"). The Motion asks the Court to (1) strike from the Final Invalidity Contentions two prior art references that Defendants argue anticipate the patents, or alternatively, to decide that one of them is not actually prior art, and (2) strike from the Final Invalidity Contentions Defendants' contention that the asserted claims fail 35 U.S.C. § 101. (Dkt. No. 64 at 1.)

Defendants filed an opposition to the Motion on October 6, 2014. (Dkt. No. 89.) Plaintiff filed a reply on October 13, 2004. (Dkt. No. 91.) The Motion is GRANTED IN PART, as to the prior art references, AND DENIED IN PART, as to the 35 U.S.C. § 101 defense.

**BACKGROUND**

On August 15, 2014, Defendants served their Final Invalidity Contentions. (Dkt. No. 66-3.) On September 24, 2014, Defendants filed four motions for summary judgment: (1) for non-infringement by Costco (Dkt. No. 74), (2) for invalidity of both Asserted Patents (Dkt. No. 75); (3) for non-infringement of the '728 Patent (Dkt. No. 76), and (4) for non-infringement of the '694 Patent (Dkt. No. 80). On the same date, Plaintiff filed this Motion and a motion for summary judgment on Plaintiff's Fifth Counterclaim, for patent misuse. (Dkt. Nos. 64 and 62).

On September 29, 2014, the Court struck Defendants' motions and ordered Defendants to file a single consolidated motion, the briefing schedule and page limits for which would be provided

when this Motion is decided. (Dkt. No. 83.) The Court does so in Section 3. The Court also ordered the Parties to discuss resolution of Plaintiff's motion for summary judgment on Defendants' patent misuse defense. (Dkt. No. 83.) The parties did so, and to Defendants' credit, they agreed to dismiss that defense. (Dkt. No. 92.)

**LEGAL STANDARD**

Standing Patent Rule 4.2 provides for Final Invalidity Contentions—if different from the Preliminary Contentions—to be served no later than 28 days after service of the Final Infringement Contentions. S.P.R. 4.2. The rule further provides that "[t]he deadlines provided in this rule do not excuse the requirement to supplement disclosures and discovery responses promptly. If a party receiving Final Invalidity Contentions believes that amendments were made without good cause, it may move the Court to strike them." *Id.* "Amendments are subject to a good cause standard but do not require prior Court approval where they are made due to a claim construction by the Court different from that proposed by the party seeking amendment, or recent discovery of material prior art that was not discovered, despite diligent efforts, before the service of the Invalidity Contentions." S.P.R. 4.2.2.

Patent rules, such as the Court's Standing Patent Rules, require "both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery. The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). "Good cause" for amendment requires a showing of diligence. *Id.* at 1366; *see also* S.P.R. 4.2.2.

The Asserted Patents were filed before March 16, 2013, so the pre-America Invents Act version of 35 U.S.C. § 102 applies. It provides:

A person shall be entitled to a patent unless -

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

* * *

(e) the invention was described in — (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent . . . .

35 U.S.C. § 102 (2002).

**ANALYSIS**

    **1.**      **NEWLY ASSERTED PRIOR ART REFERENCES**

There are two newly asserted prior art references at issue. The first is provisional U.S. Patent Application No. 60/180,013 (the "Elite Provisional Application"). It was filed on February 3, 2000. (Mot. 7.) Howard Conyack, NYLX's CEO and expert in this case, was one of the five inventors of the Elite Provisional Application. (Kaufman Decl. in Supp. of Mot. ("Kaufman Decl.") Ex. 7, Dkt. No. 69-1 at 6.) On February 5, 2001, the same group of inventors filed non-provisional U.S. Patent Application No. 09/777,179 ("Elite Parent Application"), now abandoned, claiming priority to the Elite Provisional Application. (Kaufman Decl. Ex. 8-1, Dkt. No. 71-1 at 2, 5, and 80.) On July 1, 2005, Conyack alone filed a continuation-in-part of that application, No. 11/174,440 ("Elite CIP Application"), claiming priority to the Elite Provisional Application. Conyack assigned the Elite CIP Application to NYLX on April 13, 2007. (Kaufman Decl. Ex. 13, Dkt. No. 70-5.)

The second prior art reference at issue is U.S. Patent Application No. 2004/0002915, filed by Russell McDonald on May 1, 2003 and published on January 1, 2004 (the "McDonald Application"),

1  which later matured into U.S. Patent No. 7,315,841 (the "McDonald Patent"). (Mot. 1.) On
2  January 30, 2006, the USPTO rejected claims in the Elite Parent Application as unpatentable over
3  the McDonald Application, and the applicants abandoned the Elite Parent Application. (Kaufman
4  Decl. Ex. 8-1, Dkt. No. 71-1 at 81-95.) On February 26, 2008, the USPTO rejected claims in the
5  Elite CIP Application as unpatentable over the McDonald Patent (Kaufman Decl. Ex. 8-2, Dkt. No.
6  72-1 at 154), and the applicant abandoned the Elite CIP Application. (Kaufman Decl. Ex. 10, Dkt.
7  No. 70-2.)

8  Defendants' Final Infringement Contentions identified 16 new prior art references, but
9  Plaintiff states that it focuses on the Elite Provisional Application and the McDonald Application
10 because they are the ones Conyack relies upon in his expert report. (Mot. 11.) Plaintiff mentions in
11 a footnote that "[o]f course, the other 14 new prior art references should also be stricken." (*Id.* at
12 n.4.) If so, Plaintiff should have addressed them. "[A]rguments raised in footnotes are not
13 preserved." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (citations
14 omitted). "A footnote is the wrong place for substantive arguments on the merits of a motion . . . ."
15 *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 935 n.1 (N.D. Cal.
16 2008). Because the other new prior art references are not adequately raised by the Motion, the
17 Court does not consider them.

### 1.1   Timely Amendment of Contentions

Plaintiff argues that both the Elite Provisional Application and McDonald Application have been long known to Defendant, as shown by the facts that (1) NYLX's CEO and expert in this case, Conyack, was an inventor of the Elite Provisional Application, and (2) the USPTO used the McDonald Application as a reference to reject two of Conyack's NYLX patent applications: the Elite Parent Application, rejected on April 28, 2006, and the Elite CIP Application, rejected on February 26, 2008. (Mot. 1-2; Kaufman Decl. Ex. 8-1, Dkt. No. 71-1 at 5, 120-28; Kaufman Decl. Ex. 8-2, Dkt. No. 72-1 at 150-164.)

Defendants respond that they did not discover the prior art references at issue or "appreciate their relevance" by the time they served their S.P.R. 2.5 Invalidity Contentions on December 20, 2013. (Opp'n 3; Decl. of Alicia M. Choi ("Choi Decl."), Dkt. No. 89-2 at ¶ 20.) Choi, a patent attorney, is not counsel of record in this case, but worked on aspects of the invalidity research and drafting. Choi first became aware of a predecessor company to NYLX in 2009. (Choi Decl., Dkt. No. 89-2 at ¶ 3.) In 2011 she was asked to prepare and file a patent application on behalf of that predecessor entity for an invention by Conyack and Allen Pollack. (*Id.* at ¶ 6.) When working on that application, Choi did not believe any of Conyack's previous patent activity was relevant, so did not "investigate his past patent matters any further." (*Id.* at ¶ 7.)

Fast-forwarding to this case, Choi says that in mid-March of 2013, Conyack, on behalf of NYLX, asked her law firm to "minimize its activities" because Conyack thought he could reach a settlement with Plaintiff. (*Id.* at ¶ 8.) Choi also offers a number of irrelevant hearsay statements, but some relevant ones, including that counsel of record for Defendants in this case were also asked to "minimize their activities" in April 2013 because of ongoing attempts to settle. (*Id.* at ¶ 10.) Choi states that in the summer of 2013, NYLX merged with another firm, and that the officers and managers of the surviving company were primarily from the other company, such that the new management did not have the historical knowledge of NYLX or an in-depth understanding of the software. (*Id.* at ¶ 14.)

Choi states that between the summer of 2013 and December 20, 2013, she and counsel for Defendants requested prior art from NYLX and Conyack, but that "NYLX and its personnel expressed a lack of awareness of any such prior art." (*Id.* at ¶ 15.) Defendants requested and received a prior art search from a professional patent search firm in November, 2013, but that did not identify the prior art at issue. (*Id.* at ¶¶ 16-18.) Choi is also "aware that personnel of" Defendant's counsel conducted a prior art search during late 2013 that did not identify the prior art at issue. (*Id.* at ¶ 19.)

It was not until April 24, 2014 that Defendants' counsel had an in-person meeting with Pollack, a programmer who coordinated the development of the accused software. (*Id.* at ¶ 21.) At that meeting, Pollack stated that Conyack had filed a patent application sometime in the late 1990s

6

or early 2000s for software "similar" to the accused software." (*Id.*) Defendants' counsel obtained the prosecution histories for the Elite Provisional Application and the Elite Parent Application on April 25, 2014, and obtained the McDonald Patent on April 28, 2014. (*Id.* at ¶ 23.) Those references were disclosed to Plaintiff's counsel through an interrogatory response on May 5, 2014 and document production on May 23, 2014. (*Id.* at ¶ 24.) Defendants continued to develop their theories of invalidity in the late spring and early summer of 2014, and internally discussed the relevance of the prior art at issue. (*Id.* at ¶ 25.)

On July 1 and 2, 2014, Conyack and Pollack disclosed that the Elite software that was the subject of the Elite Provisional and Parent Applications was commercially available in the autumn of 1999. (*Id.* at ¶ 28.) Choi states that "[t]he multiple layers and interfaces of the [accused] software obfuscated the relevance to me of the Elite Agents software," but that she prepared a chart comparing the Elite Parent Application to the asserted claims over a period of time beginning on the July 4th, 2014 holiday and continuing though July 23, 2014. (*Id.* at 29-30.) Defendants' Final Invalidity Contentions were not fully developed until August 15, 2014. (*Id.* at 31.)

The "good cause" requirement under S.P.R. 4.2 for amendment requires a showing of diligence. S.P.R. 4.2.2; *O2 Micro*, 467 F.3d at 1366. Defendants' efforts to discover NYLX's own prior art and prior art in its prosecution files were not diligent. Choi herself was working with Conyack on patent matters as early as March 2011. (Choi Decl. at ¶¶ 6-7.) That NYLX shrugged off inquiries from its own lawyers and instructed them to "minimize their activities" is the opposite of diligence. (*Id.* at ¶¶ 7-8.) *See O2 Micro*, 467 F.3d at 1367 (holding that "on-going negotiations," the need to "digest and marshal" the evidence, and the need to "analyze and respond" to information did not excuse the "over three-month delay" between learning the information and amending the infringement contentions). There is no reason that the in-person meeting that Defendants finally arranged in April, 2014, could not have occurred months before the December 20, 2013 Preliminary Invalidity Contentions. NYLX entered this case in May 2013. (Dkt. Nos. 14-16.)

The prior art at issue is NYLX's own patent application and a prior art reference cited by the USPTO in rejecting two of NYLX's patent applications. As discussed in Section 2, Defendants

7

argue that the claims of the Asserted Patents are so simple as to constitute a mere abstract idea that fails 35 U.S.C. § 101. For purposes of invalidity, the issue is not comparing the asserted claims to whatever "layers and interfaces" there are in the Accused Software, but instead, comparing the asserted claims to the prior art. If Defendants' Accused Software is relevant to this question, it is in the sense that from the outset, Defendants should have known that if prior versions of that software predated the patents in suit, they were likely to be highly relevant, as Defendant belatedly argues.

Due to the lack of diligence, the Court finds no good cause to amend the contentions to include the Elite Provisional Application and the McDonald Application. The Court therefore STRIKES those two prior art references from Defendants' Final Invalidity Contentions.

### 1.2 Prior Art Status of the Applications

Given the holding in Section 1.1, the Court need not address the prior art status of the stricken prior art, but does so here for completeness. Defendants argue that the Elite Provisional Application is prior art under 35 U.S.C. §§ 102(a) and (e). Plaintiff disagrees.

Plaintiff argues that the Elite Provisional Application is not prior art under 35 U.S.C. § 102(a) because it was confidential when filed and remained so for more than five years, only becoming available to the public in December 2005, three years after the applications for the Asserted Patents were filed. (Mot. 3, 18 (citing Kaufman Decl. Ex. 9, Dkt. No. 70-1).) Plaintiff is correct that the Elite Provisional Application was not prior art under the "described in a printed publication in this or a foreign country" prong of § 102(a) at the time of the invention.

But Defendants argue that § 102(a) is satisfied by the **use** of the system described in the Elite Provisional Application, under the "known or used by others in this country" prong of § 102(a). (Opp'n 18-19.) Defendants argue that the "Elite [ ] Provisional Application offers the evidence of the public use of the Elite Agents software through the screen shots provided to the U.S. Patent and Trademark Office in 2000." (*Id.* at 19.) Plaintiff responds that the Final Invalidity Contentions do

1  not disclose such public use, and instead cite only the filed application. (Mot. 18-19 (citing
2  Kaufman Decl. Ex. 3, Dkt. No. 66-3 at 3-4).)
3       Plaintiff is right. Defendants now, in opposition to the Motion, attempt to explain why the
4  Elite Provisional Application is evidence of prior public use, but that is of no moment when the
5  **Final** Invalidity Contentions do not disclose that position. And while the Elite Provisional
6  Application may be some evidence of prior use, the screen shots are not the dispositive, self-
7  contained, evidence of such use that Defendants suggest. So it is not fair to say that Plaintiff was
8  put on notice of the prior use theory through mere identification of the Elite Provisional
9  Application.
10       Defendants argue that the screen shots show an internet website uniform resource locator
11  ("URL"), one of which is https://qf1.quickfinance.com/v1/authorize.asp. (Kaufman Decl. Ex. 7,
12  Dkt. No. 69-1 at 15.) The inclusion of such a screen shot does not itself prove public use. First, the
13  URL could be included in a screen shot from a system that was not actually connected to the
14  internet. Second, Defendants ignore that the Elite Provisional Application states that various layers
15  of security protect the system: "The product web servers utilize Microsoft Internet information
16  Server (IIS) software which maintains individual session states using built in session handling.
17  Access to the Elite Agents System **is secured by a proprietary login system requiring a user id**
18  **and password**." (*Id.* at 13 (emphasis added).)
19       Thus, according to the application, the system was password protected, and the application
20  provides no indication that any member of the public actually used it. In any event, Defendants
21  may not convert a patented/printed publication item of prior art into a public use item of prior art
22  by argument after serving their Final Invalidity Contentions.
23       Next, Plaintiff argues that the Elite Provisional Application does not qualify as prior art
24  under Section 102(e) because that section applies only to patents and applications that are published
25  under 35 U.S.C. § 122(b), and provisional applications are not so published. (Mot. 3, 20.)
26  Defendants respond that Plaintiff misconstrues the Final Invalidity Contentions, and that what
27  Defendants really contend is that the Elite CIP Application was published, and that it is entitled to
28

1  the Elite Provisional Application's priority date insofar as the CIP contains the material in the
2  Provisional.  (Opp'n 1-2, 21-22.)
3        In reply, Plaintiff acknowledges that "[i]f Defendants had cited the Elite [ ] CIP Application
4  as prior art – which is undisputedly an application published under Section 122(b) – then it would
5  be prior art as of its earliest filing date for disclosures that are supported by the priority document."
6  (Reply 9-10 (citing *In re Giacomini*, 612 F.3d 1380, 1383 (Fed. Cir. 2010) (holding that "filing date"
7  for § 102(e) is the priority date of the earliest-claimed application that provides written description
8  report for the claimed invention)).)  But Plaintiff points out that Defendants did not cite the Elite
9  CIP Application in their Final Invalidity Contentions, instead only citing the Elite Provisional
10  Application.  (*Id.* at 10.)
11        Plaintiff is correct.  In their Final Invalidity Contentions, Defendants did not state that they
12  were relying on the Elite CIP Application to the extent it is supported by the Elite Provisional
13  Application.  Instead, they stated that they were relying on the Elite Provisional Application.  But
14  the Elite Provisional Application is not prior art under § 102(e).  Defendants must live with the
15  theories that they disclosed.
16        Finally, this is not only an issue of compliance with the rules, nor a mere § 102(e) technicality.
17  It is not true that, as Defendants argue, the Elite Provisional Application is purely a subset of what
18  appears in the Elite CIP Application.  This is not the type of information that a Court should have
19  to ferret out, but a comparison of the two documents shows that there is material in the Elite
20  Provisional Application that does not appear in the Elite CIP Application.  The term "Elite Agents
21  System" appears throughout the Provisional, and nowhere in the CIP.  The term "RDBMS" appears
22  several times in the Provisional, and nowhere in the CIP.  The provisional provides that "Upon
23  submission of the Contour Secure Online Application form, the data is automatically sent by a
24  program on Contour's server to the Elite Agents E-mail Server as a standard text attachment to an
25  email message." (Kaufman Decl. Ex. 7, Dkt. No. 69-1 at 29.)  The closest thing in the CIP is
26  "Upon submission of the secure online application, the data is automatically prepared for
27  exportation to the processing center 180 via the borrower service center database 330 and the loan
28  processing database 240." (Kaufman Decl. Ex. 9, Dkt. No. 70-1 at 28.)  In light of these and many

other items that appear in the Provisional but not the CIP, it is not true that disclosing the Provisional is the same thing as disclosing the CIP to the extent it is supported by the Provisional.

The Court therefore GRANTS summary judgment that the Elite Provisional Application is not prior art under 35 U.S.C. §§ 102(a) or 102(e).

### 2.     NEWLY ASSERTED SECTION 101 DEFENSE

Plaintiff argues that in their initial invalidity contentions, Defendants specifically stated that they "do not present any grounds of invalidity based on 35 U.S.C. § 101" "at this time," but that "[t]he final claim construction may require such an assertion of invalidity." (Kaufman Decl. Ex. 4, Dkt. No. 66-4 at 8.) That was after Defendants pled in their Answer that the Asserted Patents were "invalid for failure to comply with the statutory requirements for patentability set forth in 35 U.S.C. §§ 101, 102, 103 and/or 112." (Dkt. No. 34 at ¶¶ 20, 24.)

Generally, where a party raises invalidity defenses in its answer, "it cannot claim it was diligent in asserting them [only] in its second round of invalidity contentions over five months [here, ten months] later." *MyMedicalRecords, Inc. v. Walgreen Co.*, 2:13-CV-00631 ODW, 2013 WL 6834639, at *4 (C.D. Cal. Dec. 23, 2013). Defendants argue that their delay is excusable because between their initial and final invalidity contentions, the Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014). (Opp'n 12.) Defendants acknowledge that "*Alice* [] did not 'create' 35 U.S.C. § 101," but argue that "it did create and mandate a markedly different, and stricter, analysis for applying Section 101." (*Id.* at 13.)

*Alice* has certainly prompted renewed focus on litigating § 101 defenses. The same was true of *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc) and *Bilski v. Kappos*, 561 U.S. 593 (2010). Indeed, as Plaintiff points out, this very Court decided two of the major § 101 cases between the Federal Circuit and Supreme Court's *Bilski* decisions: *Dealertrack, Inc. v. Huber*, 657 F. Supp. 2d 1152 (C.D. Cal. 2009) and *Fort Properties, Inc. v. American Master Lease, LLC*, 609 F. Supp. 2d 1052 (C.D. Cal. 2009). (Reply 5.) And an argument can be made that *Alice* is only a modest advance, since (1) it declined to "labor to delimit the precise contours of the 'abstract ideas' category in this case

11

1  [because i]t is enough to recognize that there is no meaningful distinction between the concept of
2  risk hedging in *Bilski* and the concept of intermediated settlement at issue here," and (2) *Bilski* had
3  already rejected the machine-or-transformation test as the sole test for § 101. *Alice*, 134 S.Ct. at
4  2357; *Bilski*, 561 U.S. at 658-660.

But *Alice* did provide significant additional clarity on the effect, or lack of effect, of requiring the use of a computer in the claims. Indeed, Courts and commentators have hailed *Alice* as a significant change. Defendants collect many of those appraisals. (Opp'n 12-14.) They include:

- *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (noting *Alice* provided "the new Supreme Court authority in this delicate area" of Section 101).

- *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, CV 2:13-655, 2014 WL 4364848, at *6 (E.D. Tex. Sept. 3, 2014) (Bryson, J. sitting by designation) ("On one important issue, the Supreme Court in [*Alice*] went beyond *Bilski*. The claims in *Bilski* did not require the use of computers, while the claims in [*Alice*] did. Significantly, the Court held that the introduction of a computer into the claims did not render the claims in [*Alice*] patentable.").

- *Eclipse IP LLC v. McKinley Equip. Corp.*, CV 14-00154 GW, 2014 WL 4407592, at *3 (C.D. Cal. Sept. 4, 2014) ("*Alice* did categorically establish a clear rule that had previously been subject to debate: 'mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.' 134 S.Ct. at 2358. And before *Alice*, it was unclear to some, including the USPTO, that the framework set forth in *Mayo* applied to abstract ideas as well as to the law of nature/natural phenomena at issue in *Mayo*.").

- *Gametek LLC v. Zynga, Inc.*, CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) ("It is particularly relevant here that the substantive law in this area was

12

unsettled at the time of the prior Order. The Supreme Court had granted certiorari on the directly-applicable question of '[w]hether claims to computer-implemented inventions—including claims to systems and machines, processes, and items of manufacture—are directed to patent-eligible subject matter within the meaning of 35 U.S.C. § 101 as interpreted by this Court?' . . . While ultimately agreeing with the Federal Circuit, the decision in *Alice Corp.* provided additional clarity regarding computer system applications, an issue upon which the Federal Circuit, sitting en banc, had failed to provide a majority opinion.").

In short, *Alice* represents a big enough change to justify including a new § 101 argument in Defendants' Final Invalidity Contentions. The Court therefore DENIES the Motion to Strike Defendants' § 101 Defense.

### 3. BRIEFING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; CONTINUED TRIAL DATE

The Court previously struck the briefing on Defendants' four motions for summary judgment as exceeding the motion page limits, noting that it is the responsibility of the parties to prioritize issues in their briefs. (Dkt. No. 83.) The Court stated that it would provide the briefing schedule and page limitations for Defendants' consolidated motion when it ruled on the present Motion. The Court does so now.

Defendants' single consolidated motion for summary judgment, not to exceed 35 pages in length, shall be filed no later than November 3, 2014. Plaintiff's opposition, not to exceed 35 pages in length, shall be filed no later than November 17, 2014. Defendants' reply, not to exceed 20 pages, shall be filed no later than November 24, 2014. Defendants shall notice the hearing for January 12, 2015. Given that schedule, the Court continues the Pretrial Conference to February 9, 2015. Trial is continued to February 24, 2015.

**DISPOSITION**

The Elite Provisional Application and McDonald Application are STRICKEN from Defendants' Final Invalidity Contentions. No evidence, at summary judgment or trial, will be admitted concerning those references. The Elite Provisional Application is not prior art under 35 U.S.C. § 102(a) or 102(e).

The Motion is otherwise DENIED.

IT IS SO ORDERED.

DATED: October 27, 2014

_____
Andrew J. Guilford
United States District Judge